**STATE of Minnesota, Appellant,**

v.

**Eartha Mae FRAZIER, Respondent.**

**No. 82–214.**

Supreme Court of Minnesota.

April 9, 1982.

Warren Spannaus, Atty. Gen., St. Paul, Thomas Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for appellant.

William Falvey, County Public Defender and Joanne M. Smith, Asst. Public Defender, St. Paul, for respondent.

KELLEY, Justice.

This is a pretrial appeal by the state, pursuant to Minn.R.Crim.P. 29.03, from an order of the district court suppressing evidence on Fourth Amendment grounds in a prosecution of defendant for the gross misdemeanor offense of unlawfully possessing a pistol without a permit, Minn.Stat. § 624.714, subd. 1 (1980). We affirm the suppression order.

At 9:15 p. m. on the evening of October 28, 1981, two plain-clothes Ramsey County Sheriff's Deputies, who were driving around St. Paul in an unmarked squad car trying to serve warrants, including a warrant for the arrest of one Terri Norman on check charges, spotted defendant standing outside a St. Paul restaurant and bar. Although the deputies had never seen Terri Norman, they had a front and side view police identification photograph of her, may have been aware of her description, and had information that another officer may have seen her outside the establishment in question within the previous 3 days. Although the area where defendant was standing was dimly lit and although the officers first observed defendant from a distance estimated by one of them at 500 feet, the officers hastily concluded that defendant, Eartha Frazier, was Ms. Norman. Acting on that belief, they pulled up, jumped out, verbally identified themselves, grabbed defendant's purse and a box of take-out food she was holding, and escorted her by her arm back to the squad car. When defendant denied that she was Ms. Norman, the officers asked her if she had any identification. She responded that she had an identification card but could not show it to them because they had her purse. The officers asked her where the card was in the purse, and defendant said it was in her wallet. Without seeking or obtaining consent, one of the officers reached in and pulled out not the wallet but a brown plastic case, which she opened. Inside, this officer found the gun, a derringer. Defendant then said, "Not in there. It's in the wallet." Inside defendant's wallet the officer found identification papers revealing that defendant was who she said she was, not Terri Norman. Defendant was thereafter booked on the weapons charge.

The trial court suppressed the gun, reasoning that the arrest was lawful but that the search was an illegal, nonconsensual search.

*New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which was not cited by the attorneys in their arguments to the trial court or in their briefs on appeal, establishes that if the arrest was legal, then the search was permissible, at least under the Federal Constitution, as a lawful search incident to the arrest. *See* full discussion at 2 W. LaFave, Search and Seizure §§ 5.5, 7.1 (1978, 1982 Supp.).

However, this does not mean that the trial court erred in suppressing the evidence, because we disagree with the trial court's conclusion that the arrest was legal. Whether the arrest was legal depends on whether the record sufficiently establishes that the deputies reasonably believed that defendant was Terri Norman. *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). In *Hill*, which sustained an arrest of the wrong person, the arrest occurred in the apartment of the wanted person, the person arrested closely fit the description of the wanted person, and the person arrested acted evasively and did not give a reasonable account of how he got in the apartment if he was not the wanted person.

In our case, on the other hand, the arrest occurred outside a public establishment which presumably is patronized by numerous women. It is true that the deputies had information that Ms. Norman had been seen outside this establishment, but we have no way of knowing whether it in fact was Ms. Norman who was seen there or, if so, whether she frequented the establishment.

When the deputies first approached the establishment and from a considerable distance saw defendant standing outside it in the dimly lit doorway, they immediately concluded that she must be Ms. Norman. They then drove up next to her, jumped out and seized her purse and the box of food and led her to the squad car. We do not have a picture of defendant, a fact which must be weighed against the state, which had the burden of establishing a reviewable record that the deputies reasonably concluded that defendant was Ms. Norman. However, the information which we do have suggests that defendant differs in appearance from Ms. Norman in a number of significant ways: defendant is shorter and proportionately heavier, is nearly twice as old and has two very prominent scars on her face. Given the hastiness of the deputies in concluding that defendant was Ms. Norman, given the evidence of the defendant's differing appearance, and given the fact that the arrest did not occur at Ms. Norman's residence or even at a place which police reliably knew she frequented, we conclude that the deputies acted unreasonably in believing that defendant was Ms. Norman. Accordingly, the arrest was illegal.

█ Since there is no other basis for upholding the search,[1] we affirm the suppression order.

Affirmed.

---

1. We agree with the trial court that the search cannot be sustained on a consent theory. Whether in certain circumstances police may conduct a limited identification search of a person lawfully stopped for a temporary investigative detention is an issue which we need not decide. Even assuming the validity of such a limited search in certain circumstances, we are satisfied that such a search would not have been justified in this case without first giving defendant herself an opportunity to produce identification. 3 W. LaFave, Search and Seizure § 9.4(g) (1978; 1982 Supp.).