GEER, Judge
dissenting.
The sole issue on appeal is whether there exists a genuine issue of material fact regarding whether Officer Funk acted with malice and, therefore, is not entitled to public official immunity. I believe that the majority opinion has shown only that no issue of genuine fact exists regarding whether Officer Funk had reasonable suspicion to stop plaintiff. Yet, because Officer Funk arrested plaintiff, he was required to have *272 more than a suspicion; he could not arrest plaintiff without probable cause. The majority - which concludes that Officer Funk in fact arrested plaintiff - bases its holding that Officer Funk did not act improperly in arresting plaintiff almost entirely on an investigatory stop case, State v. Lynch, 94 N.C. App. 330, 380 S.E.2d 397 (1989), that concluded only that the officer had reasonable suspicion. The majority holds that it is permissible, when an officer suspects that an individual is another person, to arrest that person and then seek identification. That holding is an extraordinary undermining of the protections of the Fourth Amendment.
In addition, I believe that the majority improperly applies the applicable standard of review by (1) failing to require defendant Officer Funk to meet his initial burden of showing an absence of any genuine issue of material fact and (2) failing to view the evidence, including that presented by Officer Funk, in the light most favorable to plaintiff, the non-moving party. Because the majority failed to properly apply the standard of review and, at most, merely determined that Officer Funk had a reasonable suspicion sufficient to stop plaintiff, I respectfully dissent.
Discussion
It is well established that:
[r]egardless of who has the burden of proof at trial, upon a motion for summary judgment the burden is on the moving party to establish that there is no genuine issue of fact remaining for trial and that he is entitled to judgment as a matter of law. Thus, a defendant moving for summary judgment assumes the burden of producing evidence of the necessary certitude which negatives the plaintiff’s claim. Until the moving party makes a conclusive showing, the non-moving party has no burden to produce evidence.
Marlowe v. Piner, 119 N.C. App. 125, 127-28, 458 S.E.2d 220, 222 (1995) (emphasis added) (internal citations omitted). Generally, “summary judgment is not appropriate when there are conflicting versions of the events giving rise to the action, or when there is no conflict about the events that occurred, but the legal significance of those events is determined by a reasonable person test.” Griffith v. Glen Wood Co., 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007).
With respect to malice, the exception to public official immunity at issue in this case, our Supreme Court has held: “A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be *273 prejudicial or injurious to another.” In re Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). This Court has recently interpreted this definition to mean that “a malicious act is an act (1) done wantonly, (2) contrary to the actor’s duty, and (3) intended to be injurious to another.” Wilcox v. City of Asheville, 222 N.C. App. 285, 289, 730 S.E.2d 226, 230 (2012), appeal dismissed and disc, review denied, 366 N.C. 574, 738 S.E.2d 363, 401 (2013).
Regarding whether Officer Funk acted contrary to his duty, the majority concludes that under the totality of the circumstances, Officer Funk’s mistaken belief that plaintiff was Mr. Fearrington was reasonable and, therefore, plaintiff’s arrest was not contrary to Officer Funk’s duty. I disagree.
Whether a police officer has acted contrary to his duty when arresting an individual is determined by whether the officer has complied with N.C. Gen. Stat. § 15A-401 (2013) and the Fourth Amendment. See Bailey v. Kennedy, 349 F.3d 731, 746 (4th Cir. 2003) (holding officer not entitled to public official immunity for false arrest claim when arrest not in accordance with N.C. Gen. Stat. § 15A-401 and “contrary to [officer’s] duty”); Glenn-Robinson v. Acker, 140 N.C. App. 606, 615, 538 S.E.2d 601, 609 (2000) (“ ‘The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause.’ ” (quoting Rogers v. Powell, 120 F.3d 446, 452 (3d Cir. 1997))); N.C. Gen. Stat. § 15A-401(b) (2) (providing in pertinent part that officer may make warrantless arrest if he has probable cause to believe individual has committed felony or committed misdemeanor and will not be apprehended or may cause physical injury to self or others or property damage if not immediately arrested). As this Court explained in Glenn-Robinson, “ ‘[a] false arrest is an arrest without legal authority and is one means of committing a false imprisonment.’ ” 140 N.C. App. at 624, 538 S.E.2d at 615 (quoting Marlowe, 119 N.C. App. at 129, 458 S.E.2d at 223).
As this Court has explained, “there are generally two ways in which a person can be ‘seized’ for Fourth Amendment purposes: (1) by arrest, which requires a showing of probable cause; or (2) by investigatory detention, which must rest on a reasonable, articulable suspicion of criminal activity.” State v. Carrouthers, 213 N.C. App. 384, 388, 714 S.E.2d 460, 463(2011).
In this case, the parties disagreed on whether Officer Funk arrested plaintiff or whether Officer Funk merely conducted an investigatory stop. I agree with the majority that the evidence is sufficient to allow a juiy to find that Officer Funk arrested plaintiff and that plaintiff’s seizure was *274 not just an investigatory stop. Nevertheless, I believe that the majority, despite holding that Officer Funk arrested plaintiff, essentially applies the standards for an investigatory stop in deciding that Officer Funk did not act contrary to his duty. Because of its failure to recognize the differences between the two types of seizures, the majority erroneously concludes that the evidence necessary to support a stop based on mistaken identity is sufficient to support an arrest based on mistaken identity.
“An investigatory stop is a ‘brief stop of a suspicious individual[] in order to determine his identity or to maintain the status quo momentarily while obtaining more information.’ ” State v. White, 214 N.C. App. 471, 476, 712 S.E.2d 921, 925 (2011) (quoting Adams v. Williams, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923 (1972)). When, however, “the duration or nature of the intrusion exceeds the permissible scope [of an investigatory stop], a court may determine that the seizure constituted a defacto arrest that must be justified by probable cause, even in the absence of a formal arrest.” State v. Milien, 144 N.C. App. 335, 340, 548 S.E.2d 768, 772 (2001). The distinction between an investigatory stop and an arrest reveals that an officer cannot justify an arrest by the need to obtain more information - probable cause necessarily must mean more than a need to obtain additional information to confirm or dispel an officer’s belief or concern.
With respect to the issue whether plaintiff presented sufficient evidence to raise an issue of fact regarding whether Officer Funk had probable cause to arrest him, this Court has noted:
“The existence or nonexistence of probable cause is a mixed question of law and fact. If the facts are admitted or established, it is a question of law for the court. Conversely, when the facts are in dispute the question of probable cause is one of fact for the jury.”
Glenn-Robinson, 140 N.C. App. at 619, 538 S.E.2d at 612 (quoting Pitts v. Pizza, Inc., 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978)). Where the parties present substantially different versions of the facts relating to probable cause, as is true in this case, summary judgment is inappropriate and instead the issue must go to the jury who, as “[t]he trier of fact[,] must determine exactly what transpired and, based on those facts, determine if probable cause existed.” Id. at 621, 538 S.E.2d at 612.
“ ‘The test for whether probable cause exists is an objective one - whether the facts and circumstances, known at the time, were such as to induce a reasonable police officer to arrest, imprison, and/or prosecute another.’ ” Thomas v. Sellers, 142 N.C. App. 310, 315, 542 S.E.2d 283, *275 287 (2001) (emphasis added) (quoting Moore v. Evans, 124 N.C. App. 35, 43, 476 S.E.2d 415, 422 (1996)). The majority, however, fails to consider the facts and circumstances as known to Officer Funk at the time of the detention; Instead, the majority, in effect, determines post hoc what Officer Funk could have concluded given the information before this Court. Furthermore, contrary to the approach adopted by the majority, we must, on a motion for summary judgment, determine what Officer Funk knew by viewing the evidence in a light most favorable to plaintiff. We do not take Officer Funk’s assertions at face value when the record contains evidence drawing those assertions into doubt.
Officer Funk justifies his arrest of plaintiff on his claim that he mistakenly believed plaintiff was a man named Mr. Fearrington. In cases of an arrest based upon mistaken identity, if “.‘the police have probable cause to arrest one party, and [if] they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.’ ” Hill v. California, 401 U.S. 797, 802, 28 L. Ed. 2d 484, 489, 91 S. Ct. 1106, 1110 (1971) (quoting Hill v. California, 96 Cal. 2d 550, 553, 72 Cal. Rptr. 641, 643, 446 P.2d 521, 523 (1968)). Under the reasonable mistake test, an officer’s “subjective good-faith belief alone is insufficient to validate the arrest.” United States v. Glover, 725 F.2d 120, 122 (D.C. Cir. 1984). Rather, the Court must determine whether the arrest was objectively reasonable in light of the totality of the circumstances. Id.
Here, the majority relies almost exclusively on the photographs of plaintiff and Mr. Fearrington in the record which establish, in the majority’s opinion, that the two men are similar in appearance. Based on the photographs, the majority concludes that it would be objectively reasonable for Officer Funk to confuse one for the other. By relying on these photographs, the majority has not required that Officer Funk meet his initial burden as the moving party. Officer Funk did not, in arguing that he mistakenly believed plaintiff was Mr. Fearrington, come forward with evidence that no issue of fact existed as to his opportunity to see plaintiff’s face and that he had a reasonable basis for believing plaintiff was, in fact, Mr. Fearrington.
In considering the totality of the circumstances, a variety of factors may be relevant. For example, in Hill, Glover, and State v. Frazier, 318 N.W.2d 42 (Minn. 1982) (relied upon by the court in Glover), the courts looked at (1) the basis and specificity of the officer’s knowledge of the suspect’s appearance, (2) how clearly the officer was able to observe the individual, (3) the discrepancies between the description of the suspect and the individual the officer observed, (4) the officer’s reasons for believing the subject would be present in the location arrested, including *276 proximity in time and distance of suspect’s last known location, and (5) the individual's behavior.
Here, Officer Funk presented no evidence regarding the basis for his knowledge of Mr. Fearrington’s appearance. While the majority asserts that Officer Funk “knew” Mr. Fearrington, nothing in Officer Funk’s affidavit supports the majority’s claim. Officer Funk stated only that he knew that Mr. Fearrington had outstanding warrants and that he had evaded arrest earlier in the day. Officer Funk provides no explanation of how he knew what Mr. Fearrington looked like.
Moreover, Officer Funk provided no specific explanation of what about plaintiff resembled Mr. Fearrington. He merely asserted that plaintiff and Mr. Fearrington both “have similar facial features,” citing photographs attached to his affidavit, without expressly indicating whether he had that knowledge at the time of the arrest or what facial features he considered similar. Significantly, the photographs did not come into existence until several months after the arrest. As indicated by the URLs at the bottom of the photographs of both plaintiff and Mr. Fearrington, these photographs came from an article published in the periodical The Independent Weekly. In other words, the only basis presented by Officer Funk in support of his claim that plaintiff and Mr. Fearrington resembled each other was a newspaper article published three months after the arrest. Because Officer Funk bore the initial burden of establishing a lack of any issue of fact and because, in any event, we must view the evidence in a light most favorable to plaintiff, we may not infer, as the majority implicitly does, that Officer Funk was familiar with Mr. Fearrington’s appearance or knew of the similarities at the time of the arrest.
As for Officer Funk’s opportunity to observe plaintiff’s facial features, the evidence, when viewed in the light most favorable to plaintiff, gives rise to a genuine issue of fact to be resolved by the jury. Officer Funk’s own evidence indicates that plaintiff’s hand obscured plaintiff’s face and that Officer Funk decided to follow plaintiff from his patrol car because “[wjithout seeing his face I could not be certain that this subject was not the same individual who had been avoiding arrest all day.” According to Officer Funk, after stepping out of his patrol car and approaching plaintiff/rom behind, he “had still not been able to verify if this was in fact Cuman Fearrington.”
Indeed, the majority specifically notes that Officer Funk claimed that plaintiff concealed his face continuously and that Officer Funk acknowledged that without seeing plaintiff’s face, he could not be certain that *277 plaintiff was Mr. Feaxrington. I believe a jury could infer from this evidence that Officer Funk did not get a clear view of plaintiffs face until after he had proceeded with the arrest. A jury could find Officer Funk’s claim that he reasonably mistook plaintiff for Mr. Fearrington not credible when Officer Funk claimed both that he could not see plaintiff’s face and that the two men had similar facial features.
Also pertinent in this case is whether Officer Funk had reason to believe that Mr. Fearrington would be present in the location where plaintiff was arrested, including the proximity in time and distance of Mr. Fearrington’s last known location to the time and place of plaintiff’s arrest. Here, Officer Funk indicated only that Mr. Fearrington had evaded arrest in the “Central Business District” of Chapel Hill earlier that day. The jury could decide that the fact that Mr. Fearrington was trying to avoid being arrested somewhere in downtown Chapel Hill during the day did not make it reasonably likely that he was the African-American male walking down a main street in front of a convenience store and restaurant that night.
In addition, if an officer has any doubt as to whether the individual is the suspect in the arrest warrant, “the officer must make immediate reasonable efforts to confirm the suspect’s identity.” Glover, 725 F.2d at 123. See also Lynch, 94 N.C. App. at 333, 380 S.E.2d at 399 (“When an officer is unsure of the identity of a suspect, he must take reasonable steps to confirm the identity of the individual under suspicion.”).
Here, while Officer Funk admitted to uncertainty as to plaintiff’s identity, he proceeded with the arrest before making any efforts to confirm plaintiff’s identity. He did not ask plaintiff to identify himself until after he had placed him in handcuffs, and when plaintiff told him that he was not Mr. Fearrington and Officer Funk viewed his identification, he disregarded it. A reasonable juror could find that it was unreasonable to disregard the identification and that the “verification” of plaintiff’s identity - and the subsequent search of NCIC for outstanding warrants - was really an attempt to cover up the officers’ mistake in hopes of manufacturing probable cause to detain plaintiff.
While the majority opinion states that “it was not unreasonable for Officer Funk to not believe plaintiff’s claim [that he was not Mr. Fearrington] until he saw identification,” that fact at most might justify Officer Funk’s stopping plaintiff and asking for identification. The majority cites no authority - and I have found none - that authorizes an officer, with doubts about the identify of a suspect, to arrest the individual and ask questions later.
*278 I believe that the totality of the circumstances in this case - based on the evidence viewed in the light most favorable to plaintiff - would permit a jury to find that Officer Funk had not acted reasonably when mistakenly arresting plaintiff. Defendant, however, contends that the United States Supreme Court’s decision in Hill requires a different result.
In Hill, the United States Supreme Court held that a mistaken arrest was valid when the officers went to the address of the suspect and, in that apartment, which had a locked door, found a person matching the description of the suspect. 401 U.S. at 803, 28 L. Ed. 2d at 489, 91 S. Ct. at 1110. Although the person claimed to be someone else, the Supreme Court noted that “aliases and false identifications are not uncommon” and that the person in the apartment did not have a convincing explanation regarding how he entered the apartment if he was not the suspect. Id. Further, the person denied knowing about any firearms being in the house, although a pistol was sitting in plain view. Id. Based on this evidence - a man matching the suspect’s description at the suspect’s known address - the Court concluded that “the officers’ mistake was understandable and the arrest a reasonable response to the situation facing them at the time.” Id. at 804, 28 L. Ed. 2d at 490, 91 S. Ct. at 1111.
Here, in contrast, the arrest did not take place at a location where Mr. Fearrington was known to be, the evidence is not specific regarding the degree to which plaintiff matched Mr. Fearrington’s description as known to Officer Funk, and plaintiff’s explanation for why he was walking up Rosemary Street at that particular time was not lacking in credibility. Moreover, plaintiff’s evidence indicated that he did not act suspiciously.
I find this case more analogous to Frazier, 318 N.W.2d at 44, in which the Minnesota Supreme Court concluded that a mistaken arrest was unreasonable. In Frazier, the officers saw the defendant at night outside a bar where the actual suspect had been seen within the previous three days. The officers viewed her from 500 feet away in a dimly lit area, decided that it was the suspect, and arrested her. The Minnesota Supreme Comí; concluded that “[gjiven the hastiness of the deputies in concluding that defendant was [the intended arrestee], given the evidence of the defendant’s differing appearance, and given the fact that the arrest did not occur at [the intended arrestee’s] residence or even at a place which police reliably knew she frequented, we conclude that the deputies acted unreasonably in believing that defendant was [the intended arrestee].” Id.
The Minnesota Supreme Court, therefore, concluded “the arrest was illegal.” Id. I find Frazier persuasive and supportive of a conclusion that *279 plaintiff, in this case, has presented sufficient evidence to raise an issue of fact regarding whether his arrest was valid.
While I have not found - and the parties have not cited - any North Carolina case specifically addressing the issue in this case, this Court’s decision in State v. Cooper, 186 N.C. App. 100, 649 S.E.2d 664 (2007), supports my conclusion that plaintiffs evidence shows that Officer Funk lacked probable cause to arrest plaintiff. The issue in Cooper was whether a police officer had reasonable suspicion to stop an individual he suspected of robbing a convenience store.
In Cooper, the officer heard a report that there was a convenience store robbery committed by a black male. Id. at 101, 649 S.E.2d at 665. The officer knew that there was a path running from the convenience store to Lake Ridge Drive, and five to 10 minutes after the robbery, the officer found the defendant, a black male, walking down Lake Ridge Drive near the path. Id. at 102, 649 S.E.2d at 665-66. The officer stopped and frisked the defendant. Id., 649 S.E.2d at 666.
This Court found that due to the vague description of the suspect as a “black male,” lack of information that the robber had fled in the direction of the path, and the fact that the defendant did not engage in suspicious behavior and fully cooperated with the officer, the officer did not have reasonable suspicion to believe that the individual he saw was the robber. Id. at 107, 649 S.E.2d at 669. The Court explained that to hold otherwise would be to hold that “police, in the time frame immediately following a robbery committed by a black male, could stop any black male found within a quarter of a mile of the robbery.” Id.
Similarly, here, a jury could reasonably infer from the lack of evidence presented by Officer Funk regarding his knowledge of Mr. Fearrington’s appearance that Officer Funk suspected plaintiff could be Mr. Fearrington merely because he was a black man walking in the vicinity of the general area where Mr. Fearrington had evaded arrest earlier in the day. As established by Cooper, these facts would be insufficient to show reasonable suspicion to justify an investigatory stop, much less an arrest. Id. See State v. Peele, 196 N.C. App. 668, 670, 675 S.E.2d 682, 685 (2009) (“Reasonable suspicion is a ‘less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.’ ” (quoting State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008))).
Officer Funk and the majority, however, claim that plaintiff was intentionally hiding his face, ignored Officer Funk’s repeated requests to stop, increased his pace of walking, and had unspecified similar facial *280 features to Mr. Fearrington. In making this argument, the majority and defendant are viewing the evidence in the light most favorable to Officer Funk, contrary to the proper standard of review for summary judgment. We are required to accept as true plaintiff’s account that he did not hide his face, but merely scratched his head; that he never increased his walking pace; and that he stopped as soon as he realized that Officer Funk was talking to him.
The majority, nonetheless, points to Lynch as establishing that photographs suggesting that two men looked similar is sufficient for a mistaken arrest, especially if the officer then attempts to verify the arrestee’s identity after the arrest. This Court, however, specifically noted in Lynch that it was not providing any guidance as to how the Court should determine the reasonableness of a mistaken identity arrest: “Under the facts of this case, we need not decide whether the officer’s initial mistake justified an arrest; it was at least sufficient to establish a reasonable basis to stop defendant and require him to identify himself.” 94 N.C. App. at 333, 380 S.E.2d at 399. The Court proceeded to say, with respect to an investigatory stop, that “[w]hen an officer is unsure of the identify of a suspect, he must take reasonable steps to confirm the identity of the individual under suspicion.” Id.
Contrary to the majority opinion’s assertion, nothing in Lynch suggests that a mistaken identify arrest is reasonable so long as the officers use diligence to confirm the identity of the individual after initiating the arrest. The majority misreads Lynch when it states that “after the defendant attempted to flee, officers were then authorized to arrest the defendant in order to ‘ascertain his identify.’ ” (Quoting Lynch, 94 N.C. App. at 333, 380 S.E.2d at 399.) In Lynch, after upholding the stop of the defendant as constitutional, the Court then concluded that the arrest was permitted - not to discover the defendant’s identify - but because the defendant actually fled: “Because defendant had not identified himself [when stopped], the officers had no choice but to apprehend him in order to ascertain his identify.” Lynch, 94 N.C. at 333, 380 S.E.2d at 399. Nothing in Lynch suggests that it is appropriate to arrest someone who has not fled and who has not yet been asked to identify himself.
The majority’s holding, in effect, allows police officers to proceed with an arrest based upon less than probable cause and arrest first, investigate later. I believe that this is an improper interpretation of the rule adopted by this Court in Robinson v. City of Winston-Salem, 34 N.C. App. 401, 238 S.E.2d 628 (1977).
Robinson addressed the question “whether in an action for false arrest or false imprisonment the officer who arrests the wrong person *281 is strictly liable or is liable only in the absence of reasonable diligence.” Id. at 406, 238 S.E.2d at 631. The Court in Robinson acknowledged that the rule adopted by the majority of courts is that “the officer will not be liable for false imprisonment for mistaking the identity of the person named in a warrant if he exercises reasonable diligence to ascertain the identity correctly before he serves the warrant.” Id. (emphasis added). Noting that the alternative strict liability approach “imposes an unreasonable burden upon the officer who is both careful and diligent,” Robinson adopted the majority rule. Id.
The majority in this case asserts that “when the officer must use reasonable diligence is not specifically enunciated in Robinson." (Emphasis added.) In support of this assertion, the majority opinion plucks an isolated quotation from Robinson, disregarding the Court’s primary articulation of the majority rule quoted above and disregarding the cases relied upon by the Court as support for the rule. The majority rule as initially articulated in Robinson, expressly and unambiguously states that an officer must exercise reasonable diligence “before he serves the warrant.” Id.
The Court then, “[f]or examples of cases following this rule” refers to three decisions from other jurisdictions. Each of those decisions expressly holds that the officer must exercise due diligence prior to effecting the arrest. See Miller v. Fano, 134 Cal. 103, 109, 66 P. 183, 185 (1901) (noting an officer “owes a duty to the public and to the party about to be arrested” and “should use prudence and diligence to find out if the party arrested is the party described in [the] warrant” (emphasis added)), disapproved of by Hagberg v. California Fed. Bank FSB, 32 Cal. 4th 350, 81 P.3d 244 (2004); Wallner v. Fid. & Deposit Co. of Maryland, 253 Wis. 66, 70, 33 N.W.2d 215, 217 (1948) (“The officer is liable if he fails to take proper precaution to ascertain the right person, or if he refuses information offered that would have disclosed his mistake, or if he detains the person an undue length of time without taking proper steps to establish his identity.”); State ex rel. Anderson v. Evatt, 63 Tenn. App. 322, 328, 471 S.W.2d 949, 952 (1971) (finding evidence sufficient to support jury’s finding officers guilty of “gross negligence in failing to make an additional investigation or inquiry as to the true identity of plaintiff before placing him under arrest" (emphasis added)).
In concluding that issues of fact precluded summary judgment regarding whether the defendant police officers had exercised due care in arresting the plaintiff, the Court specifically pointed to evidence - including contradictions in the defendants’ evidence and omissions on key factors in the defendants’ affidavits -- regarding the lack of efforts to determine whether the plaintiff was the individual named in the warrant *282 prior to arresting the plaintiff. Robinson, 34 N.C. App. at 407-08, 238 S.E.2d at 632. The Court did not discuss what the officers could have done post-arrest. Instead, the Court noted as additional evidence of liability that “even after the officers knew that they had arrested the wrong person, plaintiff was still held in jail overnight before he was allowed to go free.” Id. at 408, 238 S.E.2d at 632. In other words, the defendants could be held liable for further detaining the plaintiff after they knew of the mistaken arrest.
Nothing in Robinson suggests that an officer may - as occurred here -- arrest and then conduct the due diligence after the fact. The Court’s purpose in adopting the due diligence rule in Robinson was to ensure that officers who are both “careful and diligent” will not be held civilly liable for an unlawful arrest. Id. at 406, 238 S.E.2d at 631. The majority’s interpretation of Robinson would allow an officer who was not “careful and diligent” in ascertaining the arrestee’s identity prior to initiating an arrest to avoid liability so long as he later uses “due diligence” to confirm the identity afterwards. See id. I do not believe that the majority opinion is consistent with either the express holding in Robinson or its reasoning.
Here, while Officer Funk admitted to uncertainty as to plaintiff’s identity, he proceeded with the arrest before making any efforts to confirm plaintiff’s identity. He did not ask plaintiff to identify himself until after he had placed him in handcuffs and declared plaintiff was under arrest, and when plaintiff told him that he was not Mr. Fearrington and Officer Funk viewed his identification, he disregarded it. While Officer Funk may have had reasonable suspicion to stop plaintiff and ask him to identify himself based on what he knew and should have then conducted due diligence before arresting plaintiff, Lynch and Robinson do not support the majority’s assumption that the same level of knowledge - without any due diligence in verifying plaintiff’s identity - is sufficient to support both an arrest and an investigatory stop.
The majority claims that Robinson is distinguishable on the facts. The “facts” on which the majority relies are, however, either unsupported by the record or represent Officer Funk’s version of what occurred. Contrary to the majority opinion’s assertion, there is no evidence that Officer Funk “knew” Mr. Fearrington, plaintiff’s evidence indicated that he was not about to flee, and according to plaintiff, Officer Funk did not have to order him to stop “several times,” as the majority states, but rather he stopped immediately after he realized Officer Funk was talking to him. Further, the majority’s purported distinction of Robinson does not explain why Officer Funk, in this case, could not have stopped plaintiff and asked for his identification prior to arresting him.
*283 Moreover, the majority’s reasoning cannot be reconciled with this State’s choice not to enact a “stop and identify” statute. The United States Supreme Court in Hiibel v. Sixth Judicial Dist. Court of Nevada, 542 U.S. 177, 187, 159 L. Ed. 2d 292, 303, 124 S. Ct. 2451, 2459 (2004), recognized that under the Fourth Amendment, an individual is not required to answer an officer’s questions or identify himself during an investigative stop. Nevertheless, a State “stop and identify” statute “requiring a suspect to disclose his name in the course of a valid Terry stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures.” Id. at 188, 159 L. Ed. 2d. at 304, 124 S. Ct. at 2459.
North Carolina, however, does not have a “stop and identify” statute. Therefore, although Officer Funk could have asked plaintiff to identify himself, he could not have compelled plaintiff to do so. See In re D.B., 214 N.C. App. 489, 495-96, 714 S.E.2d 522, 526-527 (2011) (noting North Carolina does not have a “stop and identify” statute and holding that during a Terry stop, an officer is not permitted to search for a person’s identification in order to protect himself or to seize an identification card, but may ask for identification). The majority, however, holds that it is within the scope of an officer’s duty to arrest a person and then demand identification.
Further, Officer Funk should not have been allowed to extend a mistaken arrest to investigate plaintiff, without reasonable suspicion of any criminal activity, to see if he could justify the arrest after the fact. As the United States Supreme Court has explained:
The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer’s suspicion in a short period of time.
Florida v. Royer, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 103 S. Ct. 1319, 1325-26 (1983). Certainly, if an investigative stop must end as soon as its purpose is completed, then an arrest should cease as soon as the officers learn that it was mistaken. Since I know of no authority that would allow a mistakenly arrested person, not subject to a traffic stop, to be detained to conduct a database search for other charges, Officer Funk should have released plaintiff as soon as he knew he had made a mistake.
*284 In sum, I would hold that the evidence is sufficient to support the conclusion that defendant acted contrary to his duty by arresting plaintiff without probable cause. Plaintiff must also show, however, that defendant acted wantonly and with intent to injure. “[EJvidence of constructive intent to injure may be allowed to support the malice exception to [public official] immunity.” Wilcox, 222 N.C. App. at 291, 730 S.E.2d at 232. “[A] showing of mere reckless indifference is insufficient, and a plaintiff seeking to prove malice based on constructive intent to injure must show that the level of recklessness of the officer’s action was so great as to warrant a finding equivalent in spirit to actual intent.” Id. Such a showing would necessarily also satisfy the first requirement that the defendant act wantonly. See In re Grad, 312 N.C. App. at 313, 321 S.E.2d at 890-91 (“ ‘An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.’ ” (quoting Givens v. Sellars, 273 N.C. 44, 50, 159 S.E.2d 530, 535 (1968))).
With regard to the intent to injure prong of malice, the Fourth Circuit has noted that “North Carolina courts have found summary judgment inappropriate where there is a genuine issue of fact as to an officer’s state of mind when engaging in allegedly tortious conduct.” Russ v. Causey, 468 F. App’x 267, 276 (4th Cir. 2012) (finding that officer’s conduct in executing an arrest warrant at funeral demonstrates an intent to injure). Additionally, in the context of a civil suit for malicious prosecution, our Supreme Court has noted that it is “well settled that malice may be inferred from want of probable cause, e.g., as where there was a reckless disregard of the rights of others in proceeding without probable cause.” Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966).
I would find that there are further questions of fact regarding whether defendant acted wantonly and with intent to injure plaintiff. The injury in this case is an injury to plaintiff’s Fourth Amendment right to be free from unreasonable search and seizure. I believe that the evidence is sufficient to allow a jury to find that Officer Funk acted with an actual intent to unlawfully detain plaintiff while Officer Funk attempted to manufacture after-the-fact justification for the arrest.
The majority dismisses any claim of an intent to injure, reasoning: “Believing plaintiff was someone else who had arrest warrants issued against him and had evaded police earlier that day, Officer Funk seized plaintiff while confirming his belief.” This assertion underscores the majority’s merging of investigatory stops and arrests. Controlling authority required Officer Funk to attempt to “confirm[] his belief’ that plaintiff was Mr. Fearrington prior to arresting him.
*285 In addition, according to plaintiffs verified complaint and deposition, Officer Funk spoke to plaintiff sarcastically and disrespectfully in response to plaintiffs assertion that he was a business owner. The evidence also shows that after plaintiff told Officer Funk that he was not Mr. Fearrington and Officer Funk viewed plaintiffs identification, Officer Funk continued to keep plaintiff in handcuffs while his partner contacted communications to “verify” his identification and gather further information that might justify an arrest. When communications verified plaintiff’s identification and could not find any outstanding warrants that would justify the stop, Officer Funk removed the handcuffs and left without apologizing to plaintiff.
Under these circumstances, a reasonable juror could infer that Officer Funk acted with a level of recklessness toward plaintiffs rights equivalent in spirit to an actual intent to injure, as required by Wilcox. See Walker v. Briley, 140 F. Supp.2d 1249, 1263 (N.D. Ala. 2001) (plaintiff made sufficient showing of malice to survive motion for summary judgment on immunity grounds where “[t]he evidence, viewed most favorably to [plaintiff], suggested] that [police officer] had no grounds to believe [plaintiff] had committed any offense whatsoever but rather simply did not like [plaintiff] questioning his authority or suggesting racist motivations”).
Unlike the doctrine of qualified immunity in federal cases, which requires the court to examine the objective reasonableness of an official’s action, “[i]mmunity of public officials to state law claims . . . involves a determination of the subjective state of mind of the governmental actor, i. e., whether his actions were corrupt or malicious.” Andrews v. Crump, 144 N.C. App. 68, 76, 547 S.E.2d 117, 123 (2001). We must “determine the defendants’ actual knowledge or intentions regarding the violation of plaintiffs’ rights.” Id. at 77, 547 S.E.2d at 123. In Andrews, plaintiff’s allegation that the defendants acted with the knowledge that the act was unlawful and in violation of plaintiff’s rights was sufficient to create an issue of fact regarding whether the official acted with malice. Id. (observing that “defendants knew [plaintiff] had no involvement in criminal activity, yet proceeded to file the liens against him anyway”).
There are discrepancies in Officer Funk’s affidavit, the radio log from that night, and the incident report prepared two weeks later, only after an inquiry by the NAACP, and unsigned by Officer Funk. These discrepancies, among other things, attempt to shorten the time period that plaintiff was detained. If the jury chooses to believe plaintiff’s testimony regarding the length of the detention, it could find that Officer Funk’s attempt to hide how long the detention lasted was evidence *286 that the continued detention was without legitimate justification and in bad faith.
Further, the African-American officer who arrived at the scene of plaintiffs arrest after plaintiff questioned whether he was stopped because of his race does not appear on either the radio log or in the incident report as being present. Plaintiff has also presented evidence of comments suggestive of racial bias.
This evidence could lead a reasonable juror to conclude that Officer Funk did not act in good faith and acted for improper motives when he continued to detain plaintiff in handcuffs after seeing plaintiff’s identification. I would hold that because the evidence supports a finding that Officer Funk not only acted without probable cause, but additionally that he did so knowingly, this creates a genuine issue of fact as to whether he acted with intent to injure plaintiff. See also Glenn-Robinson, 140 N.C. App. at 626, 538 S.E.2d at 616 (evidence that officer arrested plaintiff without probable cause, appeared angry, and grabbed plaintiff’s arm sufficient evidence that officer acted with malice and was not entitled to summary judgment on the basis of public official immunity).
I, therefore, would affirm the trial court’s denial of Officer Funk’s motion for summary judgment based on public official immunity. Accordingly, I respectfully dissent.