STATE of Minnesota, Respondent,

v.

Wilson SANDERS, Appellant.

No. CO–82–1637.

Supreme Court of Minnesota.

Nov. 4, 1983.

Rehearing Denied Dec. 8, 1983.

Kenneth Meshbesher, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., and Thomas J. Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

## OPINION

TODD, Justice.

Defendant is being prosecuted in district court for possession of cocaine, which the police seized when defendant threw it away as he was alighting from his car after the police stopped him. Police stopped the car in the mistaken belief that defendant was one Ronald French, who they had probable cause to believe was guilty of selling stolen property. Defendant contended at the omnibus hearing that the police did not have a sufficient basis for thinking that he was French and that therefore the cocaine should be suppressed and his prosecution terminated. The district court, while acknowledging that the issue was close, held the police did not violate defendant's Fourth Amendment rights and refused to suppress the evidence. Defendant then waived his right to a jury trial and stipulated to the state's case. However, instead of deciding the issue of defendant's guilt, the court, over the objection of the state, granted a defense motion to certify the suppression issue to this court for pre-trial decision pursuant to Minn.R.Crim.P. 29.02, subd. 4. We affirm the order denying the motion to suppress and we remand for trial.

On June 22, 1982, Sergeant Robert Paskett of the St. Paul Police Department reissued a "pickup order"—i.e., an arrest order—which he originally had issued on May 27 for one Ronald French on a charge of selling stolen property. The earlier order indicated that French was known to drive a white Mustang, but the reissued order indicated that he also had been driving a red Ford with Minnesota license plate number FFK 785. A few minutes after the order was broadcast over police radio, another officer, who gave his identification number, stated over the radio that he was familiar with Mr. French and that he had a grey streak in his hair. We now know that his information was wrong. The officer who made this statement apparently was thinking of another black man whose last name is French who did have a grey streak in his hair.

At 2:00 p.m. on June 22 Officers Neil Nelson and Robert Ashton stopped a red Ford with the described license plates near Selby and Dale in St. Paul. The driver of the car identified himself as John Pettiford, Jr., and explained that he had let a man

named "Frenchie" use the car. He said that he had seen "Frenchie" driving a black and white Cadillac Seville with Wisconsin plates. The officers let Pettiford go.

The following morning at roll call Sergeant Paskett asked Officers Nelson and Ashton to continue looking for French and he showed them a police identification photograph of French. French did not have a grey streak in his hair in the picture but the picture was approximately 10 months old.

Later that day Officer Nelson was working as an off-duty plain-clothes officer riding buses for the MTC. At 6:00 p.m., when the bus he was riding stopped at Selby and Dale, Nelson looked out and, from a distance of about 35 feet, saw defendant standing in front of a bar. Thinking that defendant looked like French, Nelson got off the bus. However, by the time he did so, defendant had begun walking to a yellow Cadillac nearby. As defendant drove off, Nelson copied the car's Minnesota license plate number. Nelson then telephoned the information to the police communication center.

At 3:00 p.m. the next day Nelson received a call from a fellow officer, who had just seen the car parked at Selby and Dale. While driving past the same bar on his way to Laurel and Dale to meet the other officer, Nelson, from a distance of about 20 feet, saw defendant standing in front of the bar. From Laurel and Dale, which was about 200 feet from the car, the officers watched the car until defendant got in it and began driving. The officers then requested an officer in a marked squad car to stop the car and identify the driver, who they believed was French.

After stopping, defendant slid over to the passenger side of the front seat, opened the door and got out. As he did so he threw some objects. While one officer patted defendant down, two officers recovered the abandoned items, a number of bindles of cocaine. The officer who patted defendant down put him in the squad car, gave him a *Miranda* warning and asked for identification. It was then that he learned that defendant was not French.

In *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), the police, having probable cause to arrest Hill on robbery charges, went to Hill's apartment, where they met Miller, who matched Hill's description. Believing that Miller was Hill, the police arrested him and searched the apartment as an incident of the arrest. The Court upheld the arrest because the mistake by the police was a reasonable one made in good faith.

Last year in *State v. Frazier,* 318 N.W.2d 42 (Minn.1982), we held that a similar mistake by police was unreasonable under the facts of that case. There the police mistakenly concluded that the defendant, who was standing outside a St. Paul restaurant and bar waiting for a bus, was a woman named Terri Norman, whom they had probable cause to arrest. The officers stopped their car, jumped out, identified themselves, grabbed the defendant's purse and a box of take-out food she was holding, and escorted her back to the squad car. When the defendant denied that she was Ms. Norman, the officers asked her if she had any identification. She said that she did but that it was in a wallet in her purse and that they had the purse. Without seeking or obtaining consent, one of the officers reached in the purse and pulled out a plastic case, not the wallet. Inside the case the officer found a gun. In upholding an order suppressing the gun, we stated in part:

> [T]he arrest occurred outside a public establishment which presumably is patronized by numerous women. It is true that the deputies had information that Ms. Norman had been seen outside this establishment, but we have no way of knowing whether it in fact was Ms. Norman who was seen there or, if so, whether she frequented the establishment. When the deputies first approached the establishment and from a considerable distance saw defendant standing outside it in the dimly lit doorway, they immediately concluded that she must be Ms. Norman. They then drove up next to her, jumped out and seized her purse and the box of food and led her to the squad car. We do

not have a picture of defendant, a fact which must be weighed against the state, which had the burden of establishing a reviewable record that the deputies reasonably concluded that defendant was Ms. Norman. However, the information which we do have suggests that defendant differs in appearance from Ms. Norman in a number of significant ways: defendant is shorter and proportionately heavier, is nearly twice as old and has two very prominent scars on her face. Given the hastiness of the deputies in concluding that defendant was Ms. Norman, given the evidence of the defendant's differing appearance, and given the fact that the arrest did not occur at Ms. Norman's residence or even at a place which police reliably knew she frequented, we conclude that the deputies acted unreasonably in believing that defendant was Ms. Norman. Accordingly, the arrest was illegal.

318 N.W.2d at 43–44.

In a footnote we stated in part:

Whether in certain circumstances police may conduct a limited identification search of a person lawfully stopped for a temporary investigative detention is an issue which we need not decide. Even assuming the validity of such a limited search in certain circumstances, we are satisfied that such a search would not have been justified in this case without first giving defendant herself an opportunity to produce identification. 3 W. La-Fave, *Search and Seizure* § 9.4(g) (1978; 1982 Supp).

318 N.W.2d at 44 n. 1.

■ We did not address in *Frazier* the issue of whether the officers, with the information they had, properly could have approached the defendant for the limited purpose of ascertaining her identity in a reasonable way, because it was clear that the police did not so limit their intrusion. The instant case is different in that the only intrusion that the state had to justify was a stop for the limited purpose of reasonably ascertaining defendant's identity. The standard for such an intrusion is whether the officers have specific and articulable facts objectively establishing reasonable suspicion. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pleas,* 329 N.W.2d 329 (Minn.1983); *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975).

We conclude that the record supports the trial court's conclusion that the state met its burden of proving that Officer Nelson and the officers reasonably suspected that defendant was Mr. French. Defendant, like French, is a short black man. It is true that he was 52 at the time, whereas French was only 30; arguably, however, French looked older than 30 in his picture. Further, defendant has a facial structure that is quite similar to that of French. It is also significant that Nelson reasonably believed that French had a prominent grey streak in his hair. Nelson also was justified in thinking that French might well be driving the Cadillac; indeed, the officer's information suggested that French had been seen in many different cars.

■ Looking at the totality of the circumstances and bearing in mind the standard that applies in such a case, we hold that the police did not violate defendant's Fourth Amendment rights in stopping him. That being so, the abandonment of the cocaine was not the product of any police illegality—see, *State v. Dineen,* 296 N.W.2d 421 (Minn.1980) (affirming suppression of drugs where abandonment was prompted by threat of search by officer who did not have probable cause to search)—but was the product of a valid limited intrusion into defendant's freedom of movement. *City of St. Paul v. Vaughn,* 306 Minn. 337, 237 N.W.2d 365 (1975).

Remanded for trial.