FACTS
ISSUES
ANALYSIS
Poehler challenges the district court's denial of his motion to suppress evidence arising from the traffic stop. We review factual findings supporting the district court's denial of a motion to suppress for clear error, and we review its legal conclusions de novo. State v. Gauster , 752 N.W.2d 496, 502 (Minn. 2008). Poehler disputes no factual finding, so we consider de novo his assertion that the officer's observations provided no reasonable suspicion to stop him.
Poehler maintains that Officer Giese's stop violated his Fourth Amendment rights. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A police officer who stops and detains a person momentarily to investigate suspected criminal activity has not unreasonably seized the person in violation of the Fourth Amendment if the officer can articulate specific circumstances that, taken with their rational inferences, reasonably warrant the detention. Terry v. Ohio , 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). An officer therefore may constitutionally stop a car if the officer reasonably suspects that the driver has violated a motor vehicle law. State v. Duesterhoeft , 311 N.W.2d 866, 867 (Minn. 1981). We review de novo the district court's legal conclusion that a stop rests on reasonable suspicion. Gauster , 752 N.W.2d at 502. Poehler maintains that Officer Giese's observation of his cracked windshield could not lead the officer to reasonably suspect that he was violating any motor vehicle law.
Poehler's argument requires us to answer whether an officer's seeing any windshield crack-regardless of its extent-constitutes a reasonable basis for the officer to suspect that the driver is violating the obstructed-vision statute, Minnesota Statutes, section 169.71, subdivision 1(a)(1) (2018). That statute prohibits a person from driving a "motor vehicle with ... a windshield cracked or discolored to an extent to limit or obstruct proper vision." The question of whether a stop can rest on the appearance of a crack alone, regardless of the extent of the crack, is one of first impression. Other cases have involved stops resting on an extensively cracked windshield or on cracks of undescribed extent where the validity of the stop was not challenged or decided on appeal. For example, in State v. Varnado , the supreme court considered the appeal of a defendant whom officers stopped after they "observed a car with a shattered windshield," 582 N.W.2d 886, 888 (Minn. 1998), but "that stop [was] not being contested." Id. at 893 (Gilbert, J., dissenting). This court later considered a stop involving a police officer who had "pulled the pickup over, believing that he saw a windshield severely cracked and, thus, obstructing the driver's view," and there we held that "the stop itself was proper." State v. Miller , 659 N.W.2d 275, 277-78 (Minn. App. 2003) ; see also State v. Tomaino , 627 N.W.2d 338, 340 (Minn. App. 2001) ("The parties agree that the cracked windshield provided a legal basis for the investigatory stop."). This is the first case where we are asked whether every windshield crack of any extent justifies a police stop under the obstructed-vision statute. Our answer is no.
The statute's qualifier, "to an extent to," informs us that not every cracked windshield constitutes a violation. A person violates the statute only by driving with a windshield crack that, because of its characteristics, such as its location and its size, severity, or shape, limits or obstructs the driver's vision. By analogy, we observe that the obstructed-vision statute somewhat parallels the impaired-driver statute, which makes it a crime for anyone to drive when he "is under the influence of alcohol." Minn. Stat. § 169A.20, subd. 1(1) (2018). As counsel for the state acknowledged at oral argument, a police officer may not constitutionally stop a driver merely because the officer knows the driver has been drinking. An officer can no more constitutionally stop a person for a cracked windshield without having reason to suspect that the extent of the crack limits the person's vision than he can stop *581 a person for driving after drinking without having reason to suspect that the extent of the drinking impairs the person's functionality. We hold that an officer may stop a vehicle based on its having a cracked windshield only when the circumstances would lead a reasonable officer to suspect that, because of the crack's specific characteristics, it is limiting or obstructing the driver's view.
The district court did not find that an objective, reasonable officer would have suspected that Poehler's windshield was cracked to a vision-limiting or obstructing extent. It found only that "[Officer] Giese observed a vehicle traveling westbound with a cracked windshield." The district court made no specific factual finding about the crack's location or its size, severity, shape or other characteristics, which might have allowed us to consider de novo whether a reasonable officer might suspect that the windshield was cracked to such an extent. Nor would the evidence have supported a more descriptive finding. The officer testified only that he saw a car traveling "westbound on 11th Avenue" moving past him when he observed that the car "had a cracked windshield." We therefore know nothing about the crack except that it was a crack. This is not enough to validate a stop.
The state argues that an officer must be allowed to stop a driver without reasonable suspicion that the windshield crack obstructs the driver's vision because it would otherwise be "impossible" for the officer to investigate and determine whether the crack obstructs the driver's vision. This is a diluting perspective on Fourth Amendment law, and we reject it. The state's constitutional power to search or seize a person does not rest on the state's showing that, without its warrantless intrusion into the person's privacy or liberty, the state would have a really hard time finding evidence to convict the person of a crime. It is usually difficult and sometimes nearly impossible to effectively investigate certain crimes, but there is no only-police-intrusion-makes-the-investigation-possible exception to the reasonableness requirement. We can suppose that it is similarly "impossible" for an officer to determine the extent to which a person's body contains alcohol without a stop and investigation, but, as the state has acknowledged, the Constitution demands more than knowledge of drinking to justify a stop.
It is true, as the state points out from our unpublished opinion in State v. Oliveros , No. A10-1173, 2011 WL 1833057, at *4 (Minn. App. May 16, 2011), that we previously implied that an officer may stop a car without reason to suspect that a windshield crack is extensive enough to obstruct the driver's vision. We said that it would be "impossible for an officer behind the wheel to put himself into the approaching car's traffic sight and then look straight ahead through the cracked windshield to see whether 'impairment' can be observed." But that case included a description of the crack as "large" and visible even from behind the defendant's car. Oliveros , 2011 WL 1833057, at *3. More important, our unpublished opinions are not precedential. Minn. Stat. § 480A.08, subd. 3(c) (2018). And although unpublished opinions may be cited for persuasive reasoning, Donnelly Bros. Const. Co. v. State Auto Prop. & Cas. Ins. Co. , 759 N.W.2d 651, 659 (Minn. App. 2009), the otherwise-impossible-to-investigate justification for the stop in Oliveros is not persuasive. To the extent Oliveros reasoned that an officer may premise a stop on the difficulty or even impossibility of the state's finding evidence of a crime without the stop, we renounce the reasoning.
The district court justified the stop on an unsupported ground. It reasoned, "[Officer]
*582 Giese observed, and Defendant acknowledged, that Defendant's vehicle had a cracked windshield. Because the stop was based on an equipment violation, the stop was proper." The record supports the finding that the windshield was cracked, but it lacks evidence to support the conclusion that the officer had reason to suspect a violation of the obstructed-vision statute. The stop therefore cannot stand on that ground. For the following reason, however, we nevertheless hold that the stop was constitutional.
II
Although Officer Giese lacked reasonable suspicion to stop Poehler for having a vision-impairing cracked windshield, and the district court mistakenly validated the stop on that ground, the officer nevertheless had reasonable suspicion to stop him for not wearing his seat belt. The officer gave both reasons-the supposed windshield violation and the seat belt violation-for stopping Poehler. And the state likewise also argued to the district court that Officer Giese had reasonable suspicion to stop Poehler based on the seat belt violation. It is well settled that, "[i]f the trial court's rule is correct, it is not to be reversed solely because its stated reason was not correct." Cambern v. Hubbling , 307 Minn. 168, 238 N.W.2d 622, 624 (1976) ; see also State v. Grunig , 660 N.W.2d 134, 137 (Minn. 2003) ("A respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted."). A person breaks the law by driving without a seat belt, Minnesota Statutes, section 169.686, subdivision. 1(a) (2018), and police officers may stop and charge drivers "for failing to wear a seat belt independent of any other moving violation." State v. Wendorf , 814 N.W.2d 359, 363 (Minn. App. 2012).
Poehler argues that Officer Giese's testimony that he saw Poehler not wearing his seat belt before the stop is not credible because the officer saw that Poehler was wearing his seat belt after the stop when he approached Poehler. But the district court credited the officer's testimony in the face of Poehler's argument, which was that the officer had fabricated the seat belt observation "to justify a stop he knew was not going to stand as lawful." The district court rejected the argument, finding, "It did not appear to the [officer] that the driver was wearing a seatbelt." Poehler's argument that we reject that finding, despite our deferential, clear-error standard of review, is not convincing. We recognize that, according to the officer, Poehler was wearing his seat belt by the time he walked up to the side of Poehler's stopped car. But the district court is in a far better position than we are to weigh credibility, assessing each witness during live testimony. And it is not implausible for the district court to both believe that, before the stop, it appeared to Officer Giese that Poehler was not wearing his seat belt, and that, after the stop when the officer approached, Poehler was wearing his seat belt. The district court no doubt knows that a driver might latch his seat belt after a squad car's red lights begin flashing in his rearview mirror.
We add that the stop would be valid even if Poehler was wearing his seat belt all along. The United States Supreme Court has "recognized that searches and seizures based on mistakes of fact can be reasonable." Heien v. North Carolina , --- U.S. ----, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014). And the state supreme court has similarly observed that "searches based on honest, reasonable mistakes of *583 fact are unobjectionable under the Fourth Amendment." State v. Licari , 659 N.W.2d 243, 254 (Minn. 2003) ; see also State v. Sanders , 339 N.W.2d 557, 558-60 (Minn. 1983) (upholding vehicle stop based on a reasonable mistake of fact). Because it did not appear to the officer that Poehler was wearing his seat belt, the officer had reason to suspect that Poehler was committing a traffic violation. We affirm the district court's ruling that the stop was valid.
DECISION
Under the Fourth Amendment as applied to Minnesota's obstructed-vision statute, an officer may stop a car based on its having a cracked windshield only when the circumstances would lead a reasonable officer to suspect that, because of the crack's characteristics, it is limiting or obstructing the driver's view. The officer's bare observation that Poehler's windshield was "cracked" is an insufficient ground for us to hold that a reasonable officer would suspect that the crack was limiting or obstructing the driver's view. But we affirm both the district court's decision to validate the stop and, consequently, Poehler's convictions, because the district court found that it appeared to the officer that Poehler was also driving without a seat belt.
Affirmed.