*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0626**

State of Minnesota,
Respondent,

vs.

Hurie Tyrone Boclair,
Appellant.

**Filed March 18, 2024**
**Affirmed**
**Ross, Judge**

Hennepin County District Court
File No. 27-CR-22-10162

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Tacota LeMuel (certified student attorney), Minneapolis, Minnesota (for respondent)

Sarah Gad, Gad & Gad Law Offices, Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Minneapolis police investigating Hurie Boclair as the driver of a reported single-car collision saw a knife in Boclair's pants pocket and began patting him down for other weapons. Officers found a handgun in Boclair's jacket pocket, and the state charged him

with possession of a firearm as an ineligible person. In this appeal from his conviction on that charge, Boclair argues that the district court erroneously refused to suppress evidence of the gun because the officers lacked reasonable suspicion either to detain him or frisk him for weapons. He also contends that he received ineffective assistance of counsel because his trial attorney inadequately litigated his motion to suppress evidence. Because a reasonable officer would suspect that Boclair had engaged in careless driving or other criminal conduct and that the officer risked danger from Boclair's possession of a dangerous weapon, we reject his evidence-suppression argument. And because his evidence-suppression motion would have failed even if his trial counsel had not committed the errors that Boclair alleges, we reject his ineffective-assistance-of-counsel argument. We therefore affirm.

**FACTS**

A 9-1-1 caller in December 2021 reported a single-car collision involving a driver who appeared to be asleep at the wheel and who drove into a light pole. Minneapolis police arrived at the collision scene at about 6:30 a.m., and one officer saw the apparent driver and immediately observed, "He's stumbling." At the time they arrived, the man identified as the driver—Hurie Boclair—was standing beside an ambulance and emergency medical care providers with his hands in his jacket pockets. One officer approached Boclair and asked him, "Hey, what happened man?" Boclair responded, "I haven't been on no drugs or nothing."

Another officer, who later testified that he saw a knife in Boclair's pocket, told Boclair that he would "pat [his] pockets." One officer patted the outside of Boclair's jacket

2

and felt a bulge that appeared to be a handgun. He asked Boclair if it was a gun, and Boclair answered, "Yessir." Officers took Boclair to the ground, handcuffed him, and retrieved from his jacket pocket a loaded, semiautomatic handgun. Officers also removed a switchblade knife from the right front pocket of Boclair's jeans.

The state charged Boclair with unlawful possession of a firearm. Boclair moved the district court to suppress the evidence of the gun on the theory that the officers had reasonable suspicion neither to detain him before the search nor to pat-search him for weapons. One of the officers testified at the hearing on Boclair's motion, "[W]hen there's single motor vehicle accidents, [he] tend[s] to look into DWI investigation, medical type issues, [or] the conditions of the road." The officer said that he initiated the pat-search because he suspected that Boclair was under the influence of drugs or alcohol. He also testified that he saw a knife in Boclair's pocket when he arrived at the scene. The district court denied Boclair's motion to suppress, concluding that officers had reason to suspect that Boclair was engaged in criminal activity and that he was armed and dangerous.

Boclair waived his right to a jury trial, and he agreed that the state could submit its case to the district court in a bench trial on stipulated evidence. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Boclair guilty of unlawful possession of a firearm and sentenced him to serve 40 months in prison and 20 months on supervised release.

Boclair appeals.

## DECISION

Boclair asks us to reverse his conviction on two theories. He argues first that the district court made erroneous factual findings and erred as a matter of law by denying his

3

motion to suppress evidence. And he argues second that he received ineffective assistance of counsel based on alleged failures to present a compelling case to support his motion to suppress. Neither argument convinces us to reverse.

**I**

We are not persuaded by Boclair's challenge to the district court's decision to deny his motion to suppress evidence of the gun. On appeal from the denial of a motion to suppress evidence, we review the district court's factual determinations for clear error and its legal determinations *de novo*. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). For the following reasons, we conclude that Boclair has identified no clear errors of fact and no erroneous legal determinations.

Boclair first argues that evidence of the gun should have been suppressed because it was the product of an unlawful seizure followed by an unlawful search. The federal and state constitutions protect persons from unreasonable governmental searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The Supreme Court has recognized that warrantless investigatory seizures that are limited in scope, duration, and purpose are reasonable if supported by circumstances creating an objectively reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30–31 (1968). And when those circumstances likewise create an objectively reasonable concern for officer safety, the officer engaged in a lawful stop may also conduct a brief pat-down search for weapons. *See id.* We first assess the stop under this standard, and we then consider the search.

Boclair challenges the district court's determination that the relevant circumstances provided the officers with reasonable suspicion that he was involved in criminal activity,

questioning whether the arresting officer's "unparticularized suspicion that Mr. Boclair was intoxicated [could be] a valid basis for the stop." The state argues to the contrary, defending the district court's conclusion that suspicion of impaired driving justified the officers' belief that Boclair had engaged in criminal activity warranting his brief detention for their investigation. We may assume without deciding that the record contains insufficient evidence to support a detention for an impaired-driving investigation. The supreme court has established that, even "[i]f the trial court's rule is correct, it is not to be reversed solely because its stated reason was not correct." *Cambern v. Hubbling*, 238 N.W.2d 622, 624 (Minn. 1976). Because this wholly legal question calls for our *de novo* review and because the question of reasonable suspicion is determined on a purely objective basis, we need not limit ourselves to the reasons the officer gave for the stop or the ones the district court relied on to deny the motion to suppress. *See State v. Poehler*, 921 N.W.2d 577, 582 (Minn. App. 2018) ("Although Officer Giese lacked reasonable suspicion to stop Poehler for having a vision-impairing cracked windshield, and the district court mistakenly validated the stop on that ground, the officer nevertheless had reasonable suspicion to stop him for not wearing his seat belt."), *aff'd*, 935 N.W.2d 729 (Minn. 2019). The officers in this case had a more obvious reason than impaired driving to detain and investigate Boclair.

We believe that the circumstances known to police would lead a reasonable officer to suspect that Boclair had committed a traffic offense. Officers may detain a driver to investigate even minor traffic offenses. *See, e.g.*, *State v. Barber*, 241 N.W.2d 476, 477 (Minn. 1976); *State v. Pleas*, 329 N.W.2d 329, 333 (Minn. 1983). It is a crime in Minnesota

5

to operate a car "carelessly or heedlessly in disregard of the rights of others, or in a manner that endangers or is likely to endanger any property or any person." Minn. Stat. § 169.13, subd. 2 (2022). The supreme court has explained that proof that a driver had fallen asleep at the wheel "would permit a jury, acting rationally, to convict [him] of careless driving" under this statute. *State v. Al-Naseer*, 690 N.W.2d 744, 752 (Minn. 2005). Police here had been informed by a caller or knew from their observations and impressions that a driver had driven his car into a light pole at a slow speed, that no other vehicle caused or was involved in the collision, that the driver appeared to have been asleep at the wheel when the collision occurred, and that Boclair was the driver. Under these circumstances, regardless of what the on-scene officers actually suspected, they had a reasoned basis to detain and investigate Boclair for the traffic offense of careless driving. We therefore reject Boclair's constitutional challenge to the stop.

We also reject Boclair's challenge to the constitutionality of the officers' pat-search. The overriding justification for conducting a pat-down search is officer safety. *Terry*, 392 U.S. at 25–27. During a reasonable-suspicion detention under *Terry*, police may also perform a limited search of the detainee's outer clothing to discover any weapons that might, if undetected, put the officer's safety at risk. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366 (1993). To justify a limited search for weapons, officers must reasonably believe that the pat-down search is necessary to protect their safety. *Id.* Evaluating the constitutionality of a pat-down search, we ask "whether a reasonably prudent person in the specific circumstances would believe that his or her safety was in danger." *In re Welfare of M.D.R.*, 693 N.W.2d 444, 450 (Minn. App. 2005), *rev.*

*denied* (Minn. June 28, 2005) (quotation omitted). We are satisfied that a reasonably prudent officer would pat the outer layer of Boclair's clothing under these circumstances as a safety precaution.

The relevant circumstances justified the pat-down search here. One officer testified that he saw Boclair's knife before he began the search for other weapons. In *Terry*, the seminal pat-down search case, the Supreme Court explained the rationale for the pat-down rule by recognizing that "[v]irtually" all law enforcement deaths and injuries "are inflicted with guns and *knives*." 392 U.S. at 23–24 (emphasis added). Boclair also had his hands in his pockets before officers ordered him to remove them. These circumstances informed the officers that Boclair was armed and gave them ample grounds to suspect that a pat-down search was necessary to remove the knife and locate any other weapon he possessed while they investigated the cause of the collision.

We are not persuaded to a different conclusion by Boclair's contention on appeal that the body-camera footage belies the officer's assertion that he saw the knife before he began the pat down. We defer to the district court's credibility determinations, *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989), and the district court credited the officer's testimony. Boclair seems to contend that the district court's finding was clear error because the district court should not have believed the officer. But Boclair's credibility argument falters for two other reasons. First, even if we were fact-finders who could reject the officer's testimony based on camera footage, we would not do so. The officer's body-camera footage reveals a knife clipped to and partially protruding from Boclair's pants pocket, clearly visible as he approached Boclair. Second, Boclair relies on information

7

outside the record. He contends that inconsistencies exist between the officer's testimony and his police report that cast doubt on his testimony that he saw the knife before the pat down. But the police report is not part of the record of the suppression hearing, and the district court was therefore prohibited from considering it. *See State ex rel. Rasmussen v. Tahash*, 141 N.W.2d 3, 13 (Minn. 1965). We reject Boclair's credibility challenge. The officers had a reasoned basis to conduct the pat-down search for officer safety.

## II

Boclair argues also that his trial counsel was ineffective by failing to raise or challenge several errors in the state's case that, according to Boclair, were dispositive to the district court's decision to deny his suppression motion. Both the United States and Minnesota Constitutions give criminal defendants a right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. To prevail on his claim of ineffective assistance of counsel, Boclair must show both that his counsel's performance was below an objective standard of reasonableness and that there is a reasonable probability of a different outcome without the errors of counsel. *State v. Jones*, 977 N.W.2d 177, 193 (Minn. 2022) (citing *Strickland v. Washington*, 466 U.S. 668, (1984)). We need not consider whether trial counsel's performance here fell below an objective standard of reasonableness because Boclair fails to show that the case would have come out in his favor but for the alleged errors. Boclair argues that if his trial counsel had been properly vigilant, he would have introduced adequate argument and evidence to prevent the district court from concluding that Boclair's denial that the accident was drug related supported reasonable suspicion that he was engaged in criminal activity, that Boclair had a knife in his pocket, and that

8

Boclair's hands were in his pockets when the officers spoke with him. We have decided this appeal without regard to Boclair's denial about drugs and without regard to whether his hands were in his pockets throughout the time he spoke with the officers. More litigation about those facts would not change the outcome. The only remaining issue is whether the outcome of the suppression motion would have been different if trial counsel had used the officer's police report to impeach his testimony that he saw a knife. That the report fails to say that the officer saw the knife before the pat-down search does not directly conflict with his testimony at the suppression hearing, and the impeachment value of the report is not overwhelming. Boclair has not demonstrated that his trial counsel's failure to attempt the impeachment would have led the district court to reject the officer's testimony about when he first saw the knife. Boclair's ineffective-assistance claim fails.

**Affirmed.**